```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF TEXAS
           FORT WORTH DIVISION
```

MARY K. EDELMANN,            §
    Petitioner,              §
                             §
VS.                          §   CIVIL ACTION NO.4:10-CV-531-Y
                             §
JOE KEFFER, Warden,          §
FMC-Carswell,                §
    Respondent.              §

## ORDER ADOPTING
## MAGISTRATE JUDGE'S FINDINGS AND CONCLUSIONS

In this action brought by petitioner Mary K. Edelmann under 28 U.S.C. § 2241, the Court has made an independent review of the following matters in the above-styled and numbered cause:

1. The pleadings and record;

2. The proposed findings, conclusions, and recommendation of the United States magistrate judge filed on December 29, 2010;

3. The petitioner's written objections to the proposed findings, conclusions, and recommendation of the United States magistrate judge filed on January 6, 2011, along with the First Supplemental Objections and Second Supplemental Objections filed on March 15, 2011;[1]

4. The respondent's response filed April 26, 2011; and

5. The petitioner's reply to the response filed on May 6, 2011.[2]

The Court, after **de novo** review, concludes that the petitioner's objections must be overruled, that the respondent's motion to dismiss must be granted, and the petition for writ of habeas corpus under 28 U.S.C. § 2241 should be dismissed for lack of jurisdiction, for the reasons stated in the magistrate judge's

---

[1] As permitted by this Court's order of March 15, 2011 (doc. 27).

[2] Both the response and reply were permitted by this Court's orders of March 15, 2011 (doc. 27), and May 5, 2011 (doc. 34).

findings and conclusions, and as set forth herein.[3]

The Court first notes that the magistrate judge determined that the decision of the Supreme Court in *Skilling v. United States,* 130 S.Ct. 2896 (2010) is not a retroactively-applicable decision for purposes of the first element in the test for determining whether a § 2241 petition may be filed consistently with the "savings clause" of § 2255. *See generally Christopher v. Miles,* 342 F.3d 378, 382 (5th Cir. 2003)(citing *Reyes-Requena,* 243 F.3d 893, 904 (5th cir. 2001)

> A petitioner seeking relief under the § 2255 savings clause must demonstrate three things: (1) his claim is based on a retroactively applicable Supreme Court decision; (2) the Supreme Court decision establishes that he was "actually innocent" of the charges against him because the decision decriminalized the conduct for which he was convicted; and (3) his claim would have been foreclosed by existing circuit precedent had he raised it at trial, on direct appeal, or in his original § 2255 petition.

In subsequent briefing, the respondent has now acknowledged to this Court that the *Skilling* decision **is** retroactive for such purposes. (April 26, 2011, Response.) As the *Skilling* case is not applicable to Edelmann's convictions, however, *Skilling's* being retroactive does not change the resolution of Edelmann's § 2241 petition as recommended by the magistrate judge.

Edelmann was convicted of two counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2(b), two counts of wire fraud

---

[3]Edelmann again recently filed a motion for production of the trial and sentencing transcripts. As these documents are not necessary to resolve this case, the motion will be denied.

in violation of 18 U.S.C. § 1343 and 2(b), and one count of money laundering in violation of 18 U.S.C. § 1957. The second superseding indictment shows that Edelmann was not charged, on any of these counts, with any deprivation of the intangible right of honest services. Rather, each involved a fraudulent scheme to obtain money in the form of loans: Count I--"scheme to defraud Victor Beard of $50,000;" Count II--materially false statements and materially misleading information in application for loan of $125,000 to Lexxel Funding and in turn to BNC Mortgage, Inc.; Count III--scheme to defraud Thomas Richardson of $250,000 by providing to Richardson materially false statement and materially misleading information; Count IV--scheme and artifice to defraud by transmitting in interstate commerce, by wire communication, from an account of Richardson to an account of Edelmann.

The *Skilling* line of decisions are inapplicable to Edelmann's convictions because she was not charged with or tried under any kind of fraud under an honest-services theory, nor was the jury instructed that any of the crimes charged involved an honest-services theory. In spite of Edelmann's assertions that the "jury was instructed on a scheme to defraud which includes the deprivation of honest services," the jury instructions state absolutely nothing about "honest services," and she was not convicted on any such charge. (Motion to Dismiss, Appendix at 1-15.) As noted above, Count I alleged that Edelmann contacted individuals in Arizona for the purpose of obtaining a loan to operate her purported business. Nowhere in the language of the indictment did

3

the government assert that Edelmann had any services relationship with the individuals for whom she sought the loan, or that any of these individuals were deprived of the intangible right to honest services. The court's jury instruction number 6 for Count I set out four elements, with no reference to "honest services," but rather included defendant's "scheme to obtain a $50,000 loan." (Appendix at 29.)

Count II described that Edelmann contacted an internet mortgage company to obtain a home loan. The charging language does not assert that Edelmann had any services relationship with the internet loan broker or the bank that agreed to fund the loan, or that either of these financial institutions was deprived of the right to her honest services. The court's instruction number 7 for Count II makes no reference to "honest services" but includes within the four elements defendant's "scheme to obtain a $125,000 loan." (Appendix at 31.)

Counts III and IV described that Edelmann answered a newspaper ad placed by Thomas Richardson, who was offering to buy houses for cash. Edelmann convinced Richardson to make her personal loans of $250,000 and $50,000 to fund her business based on false statements and promises she made, and false documents she provided. There was no allegation that Richardson was deprived of any honest services from Edelmann. Again, the court's jury instruction numbers 7 and 9 for Counts III and IV did not allege an honest-services element, but rather that defendant "devised a scheme to obtain a $250,000 loan" (Count III), and a "scheme to obtain a $50,000 loan" (Count

4

IV). (Appendix 33, 35.) Although Edelmann contends she was offering legal services to Richardson, her assurances to him that she was a former attorney and would assure the legality of their promissory note, were misrepresentations as a part of the fraud scheme. Edelmann was not Richardson's attorney or employee, and no intangible right to honest services was owed to Richardson. At best, Richardson was "hired" by Edelman, who then, under continuing false pretenses, stole another $50,000 of his money.

Edelmann's citation to and reliance upon *Skilling,* 130 S.Ct. 2896 (2010), *Black v. United States,* 130 S.Ct. 2963 (2010), and *Weyhrauch v. United States,* 130 S.Ct. 2971 (2010), is misplaced. In each of these cases, the defendant was actually charged with depriving others of honest services.[4] Thus, the question to determine was what conduct Congress rendered criminal by proscribing, in 18 U.S.C. § 1346, fraudulent deprivation of the intangible right of honest services. That analysis has no relevance or application to Edelman's convictions for mail and wire fraud. As another district court recently explained:

> Although Petitioner might wish it were otherwise, he was not charged with, nor did he plead guilty to, honest services fraud under § 1346. *See Skilling,* 130 S.Ct. at 2928. Moreover, in this case, the Government did not advance alternative theories of money-or-property fraud or honest-services fraud. *See Black,* 130 S.Ct. at 2966. Instead, the indictment, which enumerated the acts attributable to Petitioner, as well as the Court's questioning, the Assistant United States Attorney's

---

[4]*Skilling,* 130 S.Ct. at 2908; *Black,* 130 S.Ct. at 2967; *United States v. Weyrauch,* 548 F.3d 1237, 1239 ((9th Cir. 2008), *vacated and remanded, Weyhrauch v. United States,* 130 S.Ct. 2971 (2010).

5

description of the scheme, and the presentence investigation report's offense conduct section, make it clear that Petitioner's conduct represented conventional "mirror image" mail fraud pursuant to § 1341.[5]

Another district court succinctly rejected efforts such as those argued here by Edelmann to extend the *Skilling* line of cases to the fraud statues:

> DeGuzman seems to view the honest services provision of 18 U.S.C. § 1346 as interchangeable with all references to "scheme or artifice to defraud" in the fraud statute. Section 1346 however, only states that a "scheme or artifice to deprive another of the intangible right of honest services" is *included* in the definition "scheme or artifice to defraud." The honest services provision is therefore not the only way to commit a scheme or artifice to defraud. *Skilling* expressly applies only to the honest services provision, holding that in the context of honest services, only a bribe or kickback constitutes a "scheme or artifice to defraud." *Skilling,* 130 S.Ct. at 2930-31. This limitation is not extended to any other "scheme or artifice to defraud" criminalized by the fraud statutes.[6]

As in *DeGuzman*, *Skilling's* limitation on "honest services" fraud does not extend to the violations for which Edelmann was convicted. *See generally Skilling,* 130 S.Ct. at 2926 ("unlike fraud in which the victim's loss of money or property supplied the defendant's gain with one the mirror image of the other, the honest-services theory targeted corruption that lacked similar symmetry. While the offender profited, the betrayed party suffered no deprivation of

---

[5]*Aliucci v. United States,* Civ. No. 10-1297, Crim. No. 08-69, 2011 WL 635264, at *10 (W.D.Pa. Feb. 11, 2011).

[6]*DeGuzman v. United States,* No. SA-10-CA-951-XR, No.SA-08-403(2)-XR, 2011 WL 777934, at *2 (W.D.Tex. Feb. 25, 2011).

6

money or property; instead a third party, who had not been deceived, provided the enrichment")(citations omitted).

For similar reasons, Edelmann's citation to and reliance upon *United States v. Redzic,* 627 F.3d 683 (8th Cir. 2010), *cert. den'd,* 131 S.Ct. 2126 (2011) is also misplaced. Redzic was convicted of mail fraud, wire fraud, bribery and conspiracy to commit such offenses. Redzic, the owner of a truck-driving school, was charged based upon a scheme in which he engaged in bribes to influence an agent of the State of Missouri to submit false paperwork in connection with the issuance of commercial driver's licenses on behalf of Redzic's students. On remand from the Supreme Court in light of *Skilling,* the Eight Circuit affirmed Redzic's convictions for wire and mail fraud based upon a deprivation of honest services theory, even though the indictment did not actually recite such phrase.[7] Edelmann argues that the case thus means the government's failure to state "honest services" in the charging document in her case, does not mean that she was not so charged. But unlike Edelmann's charges for a fraudulent scheme based upon the deprivation of money, the factual allegations in the indictment against Redzic spelled out a "fraudulent scheme whereby the State of Missouri was deprived of its right to Parr's honest services in a

---

[7]*United States v. Redzic,* 627 F.3d 683, 688 (8th cir. 2010)("The indictment cites §§ 1341 and 134, which establish the substantive offenses of mail and wire fraud. It does not specifically cite § 1346, but that section does not create a separate substantive offense; it merely defines a term contained in §§ 1341 and 1343. It was therefore not necessary to cite it in the charging instrument")(citing *United States v. Gilkerson,* 556 F.3d 854, 856 (8th Cir. 2009)).

7

manner involving precisely the offense preserved in *Skilling*."[8] As the analysis in *Redzic* involved a scheme to deprive the State of Missouri of the honest services of its agent, it has no relevance to Edelmann's convictions.

Instead, Edelmann's intended or actual gain in each instance was the mirror image of the victim's loss. In this case, Beard's intended loss of $50,000, Lexell Funding/BNC Mortgage, Inc.'s intended loss of $125,000, and Thomas Richardson's intended loss of $300,000 and actual loss of $209,980.83 were not intangible losses. The theme of Edelmann's challenges appears to be that because she employed false, fraudulent, and misleading acts in trying to obtain the loans, she deprived of "honest services" the persons to whom she gave materially-false information and thus, the government implicitly indicted and convicted her upon a theory. But, Edelmann's arguments would make any scheme employing false, fraudulent or misleading acts a scheme to deprive another of the intangible right to honest services. This is not the law. In sum, Edelmann was charged with making false statements and providing false documents to obtain money from others. *Skilling* and the companion cases did not invalidate classic schemes to steal money under §§ 1341 and 1343 simply because that theft involved an element of fraud or deceit.

---

[8]*Redzic,* 627 F.3d at 688.

Therefore, the findings, conclusions, and recommendation of the magistrate judge are ADOPTED, as modified.

Respondent Keffer's motion to dismiss (doc. 11) is GRANTED.

Petitioner Edelmann's motion for production (doc. 35) is DENIED.

Mary K. Edelmann's petition for writ of habeas corpus under 28 U.S.C. § 2241 is DISMISSED for lack of jurisdiction.

SIGNED June 24, 2011.

*[signature: Terry R. Means]*

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE